**SMITH et al. v. TRAVELERS INS. CO.**

No. 6288.

Court of Civil Appeals of Texas. Texarkana.

July 11, 1947.

Rehearing Denied Sept. 4, 1947.

Feild & Woodall, of Marshall, and John E. V. Jasper, of Dallas, for appellants.

Thompson, Knight, Harris, Wright & Weisberg, of Dallas, and William T. Caven, of Marshall, for appellee.

WILLIAMS, Justice.

Appellants, Scharlotte Smith, the widow of Reuben Smith, and their two children sought to recover in this suit against appellee, The Travelers Insurance Company, the insurance carrier, the death benefits provided for under the Texas Workmen's Compensation Act. Vernons' Ann.Civ. St. art. 8306 et seq. The jury found in response to the only two issues submitted, (1) that the injury received by Reuben Smith on May 7, 1945, did not contribute to his death on July 23, 1945; and (2) that his death on July 23, 1945, was caused solely by disease. All points presented for reversal of the judgment which denied claimants a recovery relate solely to alleged misconduct of the jury.

It is without dispute that Reuben Smith on May 7, 1945, while in the discharge of his duties as an employee of a bus terminal received an injury to his left leg or knee and maybe to his hip as a result of being caught between the bumpers of two busses. An examination at the hospital where he was carried immediately after the accident and where he remained for several hours revealed no outward appearances of any flesh wound. He complained of pain in his left knee and leg. On his second return visit to the hospital for a check-up which was the fifth day after his injury, there being no ill effect detectable from a physical examination according to the physician's testimony, he was released from any further observation or treatment. No attempt was made to explain a high fever that he had on one of his visits to the hospital.

In the latter part of May, 1945, when he visited a physician of his own choice for treatment, he, according to his physician's testimony, was then under weight and toxic;

with a stiff neck, then giving him pain; then suffering and dying from syphilis in the tertiary or last stage; the disease had affected his central nervous system and he was then suffering from locomotor ataxia, namely, loss of control of his limbs. This physician gave him "shots" of mercury, tryparsanate and bismuth every five days over a period of six weeks in treating him for syphilis. In early July when this physician last saw the deceased, he thought his patient had improved some, with much less pain. On the evening prior to his death on July 23, 1945, according to his wife's testimony, they could not arouse him from his sleep, "couldn't get any sense out of him," "he couldn't do nothing, couldn't open his mouth," "completely paralyzed," "never moved or spoke." It was admitted that Reuben had suffered from syphilis for many years. It was appellants' contention that the injuries he received on May 7, whatever they were, caused the syphilis to flare up and in this way contributed to or hastened his death.

The medical testimony was in accord that a trauma could aggravate and cause syphilis in the tertiary stage to flare up and develop more violently; that the probability would be less but not impossible from a minor injury, such as mashing the toe. It is further disclosed by the medical testimony that anything may happen to a person with syphilis in the tertiary stage, whether the person has an accident or not; the disease may "flare up" and the person die quickly, or he may linger on and be a helpless cripple for many years; or at times a violent reaction could result from a medical treatment of the disease. It was the opinion of the physician who first treated him at the hospital and of the physician the deceased later called on for treatment that he died as the result of the ravages of syphilis and that the injury to his knee or leg did not contribute in any wise to his death. A third physician who did not see him testified that from the hypothetical question presented him, based on the facts above detailed, and the testimony of the wife, that "it would be reasonable to assume" that the physical injury and psychological shock aggravated the syphilis and made it more virulent. He had worked regularly at the bus station from January, 1945, when he was employed until his injury but worked to some extent under the handicap of a stiff neck which caused him pain and prevented a free movement of his head. He had taken treatment for syphilis prior to May, 1945. According to his wife, he lost control of his limbs shortly after the injury and thereafter used a cane or crutches to get around.

Before the jury had agreed to the two answers above mentioned, the jury then being divided, juror Young remarked, according to the jurors Blalock and Gibson, "What is the use, just a Negro, just a damn Negro involved," and according to juror Redmond who was then holding back, Young remarked to him, "this is just a damn Negro, why don't you come on over and make it unanimous?" Two other jurors testified they didn't hear such remarks but such could have been made and not heard by them. Juror Young testified, "I don't think I ever made a remark like that;" "I say I don't believe I made a remark like that and I don't remember;" Q. "You won't say you didn't?" A. "No, sir, my best recollection is I didn't say it." After hearing the evidence adduced on the motion for a new trial, the court overruled same, finding that both the law and the facts were with appellee. No separate findings of fact or conclusions of law were filed or requested. Above positive testimony that above remarks were made would not support an implied finding by the trial court that such alleged remarks or argument were not made, as the juror Young, himself, would not make a categorical denial that he had advanced such argument. The remarks attributed to the juror Young certainly exhibit a prejudice against the Negro as a race, persuasive of the conclusion that a Negro would stand a slim chance of obtaining a fair trial at his hands. On voir dire examination this and other jurors so impaneled qualified from questions propounded that they would and could give claimants a fair and impartial trial, and would have no bias for or prejudice against either party to the suit. Jury misconduct substantially the same as here under consideration was firmly condemned

434

and held to be prejudicial error in Makey v. Dryden, Tex.Civ.App., 128 S.W. 633, writ refused; Texas & P. R. Co. v. Phelps, Tex.Civ.App., 289 S.W. 708; and Evans v. Galbraith—Foxworth Lumber Co., Tex. Civ.App., 31 S.W.2d 496, 500.

When the provisions of Rule 327, Texas Rules of Civil Procedure are applied to the record, this court is of the opinion, as impliedly found by the trial court, that it does not reasonably appear "from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party." Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 464. If appellee was entitled to an instructed verdict as was requested at the close of the evidence, such fact under the provisions of Rule 327, supra, renders immaterial the alleged misconduct urged for reversal of the cause. Although we are not prepared to hold that if the jury had made findings to the contrary, that is, the injury did contribute to his death and that his death was not caused solely from disease, that such findings would, as a matter of law, be without support in the evidence, we are firmly of the opinion that the evidence bearing upon the cause of his death, above briefly detailed, fully and amply supports the findings as returned by the jury. The physician who saw and treated him, one of his own selection, testified that the injury did not contribute to his death but that the ravages of syphilis killed him. Weighing this positive testimony as against the contention that a trauma could aggravate a case of syphilis and hasten death, not that it did in this case, speculative in nature, such evidence is of such an overwhelming nature as to warrant the conclusion that a different verdict would not have been reached if the remarks had not been made. The jury throughout the trial knew the deceased and claimants were Negroes. This fact was freely discussed in the arguments to the jury that this was a Negro syphilis case, and that the disease killed him or that the injury aggravated and caused the disease to flare up and hasten his death.

After several hours' deliberation, the jury was allowed to separate to return the next morning for further deliberations. One Ray Musser, the manager of the bus station, who had sat in the court room as its representative in the trial and who had resumed his duties at the station, recognized the juror Gibson as the latter proceeded to purchase a bus ticket to his home, at which time both admit Musser asked "If we got through with the case, and I told him, no, sir." The juror claims that Musser then stated, "There was no question in his mind but what the Negro got hurt to some extent, but syphilis was the cause of his death or he still thought he died from syphilis." Musser denied making above statement, but to the contrary testified that the juror in reply to the inquiry if the trial was over, stated "Looks like it's going to be a hung jury;" that they came into the jury room with some controversial issues, "the way the charge was read if they thought he died of syphilis or died from an accident," and the judge instructed them they couldn't make it read that way, couldn't answer one question one way and the other another and told them to come back in the morning. Whatever the talk may have been, it occurred at the ticket office, while other passengers were in and about.

The alleged expression of an opinion denied by Musser presented a question of fact for the trial court to pass upon. It is to be implied that the court found that such expression of an opinion was not made. We are without any evidence that would warrant us to disturb such a finding of the trial court. Under the record of this case as a whole and for the reasons hereinabove discussed, we do not feel that the mere inquiry of a juror if they had reached a verdict by one interested as a representative of one of the litigants is of such a nature as to warrant the conclusion that it reasonably appears that injury probably resulted to the complaining party.

The other four points complaining of alleged jury misconduct have been carefully considered and are respectfully overruled.

The judgment is affirmed.