Martha SELMIKEIT, a feme sole, Appellant,

v.

EL PASO CITY LINES, Appellee.

No. 5566.

Court of Civil Appeals of Texas.

El Paso.

Feb. 27, 1963.

Rehearing Denied March 27, 1963.

Harold Duncan, Jr., El Paso, for appellant.

Kemp, Smith, Brown, Goggin & White and William Duncan, El Paso, for appellee.

CLAYTON, Justice.

This is a suit for damages arising out of personal injuries sustained by plaintiff, Martha Selmikeit (appellant), a feme sole, when she fell in a passenger bus being operated by an employee of defendant, El Paso City Lines (appellee). Plaintiff alleges in her petition that defendant's bus operator "caused said bus to have an unnecessary jerk" as plaintiff was attempting to get off of the bus at a stop in the City of El Paso, resulting in plaintiff being thrown to the floor of the bus and thus injured. Plaintiff is a woman who, at the time of the trial in 1961, was 70 years of age, and who is shown by pictures of her, introduced as exhibits, to be quite heavy. She came to the United States from West Germany to live with her daughter and had lived in the United States about fourteen months at the time of the accident. She had ridden a City Lines bus at least once a week during the period of her residence here.

In a trial to a jury on special issues, the jury absolved the defendant of any negligence when it found that the driver of defendant's bus did not cause said bus to have a sudden and unnecessary jerk as it approached the bus stop where plaintiff was to alight. Based on this finding the court entered a "take-nothing" judgment, from which judgment plaintiff appeals.

In the first point upon which appeal is predicated, plaintiff urges misconduct of the jury and error on the part of the court in not granting plaintiff's motion for a new trial based thereon. The claimed misconduct centered around a remark, allegedly made by one of the jurors during deliberations, that regardless of the jury's answers to the special issues submitted, plaintiff would receive compensation anyway, such remark having caused a juror, or jurors, to change the answer to Special Issue No. 1.

This issue, answered in the negative by the jury, inquired whether the driver of defendant's bus caused it to have a sudden and unnecessary jerk as it approached the bus stop where plaintiff was to alight, with the related, conditional issues of negligence and proximate cause which were, of course, unanswered. At the hearing on the motion for new trial five jurors testified. The recollection of these jurors as reflected in their testimony is vague, and in many respects such testimony is conflicting as to just what remark was made and as to just what point in the jury's deliberations any such remark may have been made. However, one juror admitted having made some statement to the effect that "if a child fell on my fence I was responsible", but could not remember at what point in the jury's deliberations it was made, although he believed "it was before the last answer". He denied saying anything about insurance with regard to the child falling. Another juror testified that she had been the only juror holding out for a "yes" answer to Special Issue No. 1, when someone said something to the effect that it wouldn't make any difference how that issue was answered, the plaintiff would get compensation anyway; and she testified further: "They finally convinced me that that was the way it was". The juror was then asked:

"Q Now, let me ask you about whether there was some discussion as to whether there was any evidence that the driver had caused the bus to jerk unnecessarily; was there any discussion about what evidence there was on the driver?

to which question the juror answered:

"A Well, there was some discussion about what was brought up here, *but I didn't think there was any evidence,* that was my opinion." (Emphasis supplied.)

If any meaning may be given to this juror's answer to the question asked

here, it must be that the juror was of the opinion that there was no evidence that the bus driver had caused the bus to jerk unnecessarily and therefore her answer to Special Issue No. 1 could properly be in the negative only—her ultimate answer to the issue. We have carefully examined all the testimony relative to the bus driver's handling of the bus and have come to the conclusion that there is no testimony showing, or even tending to show, that the bus driver *caused* the bus to "have a sudden and unnecessary jerk." We therefore feel that we are not warranted in concluding that a different verdict would have been reached if the complained-of remark had not been made. Smith v. Travelers Ins. Co., 205 S.W.2d 432 (Tex.Civ.App., 1947, err. ref., N.R.E.).

The question thus presented to us is this: From the above circumstances, was there any showing that there had occurred in this case such jury misconduct as would have warranted the granting of the motion for a new trial and, because of the overruling of such motion, now requires a reversal of this case? We think not.

In support of her first point of error, appellant cites Biers v. Fort Worth Lloyds, 219 S.W.2d 493 (Tex.Civ.App., 1949, err. ref., N.R.E.). In that case the appellant contended that the jury's answer to one of the special issues was the result of misconduct during their consideration of the cause "in that at least some of them had been induced to give such negative answer to that issue as a result of relying upon other jurors' statements during their deliberations; that an answer of 'No' to that inquiry would not affect appellant's recovery —that he would get some compensation anyway." In reviewing the testimony on motion for new trial, the appellate court found that:

> "[I]t was clearly shown that there was some discussion before the jury had so agreed upon an answer of 'No' to Issue No. 1, wherein different members stated to the others that they could answer Special Issue No. 1 'No', and that, in view of the other questions propounded to them, the court would still give the plaintiff judgment.

> "In other words, while there was an extended dispute about the matter and as to what the ultimate effect of the testimony was, as already indicated, it is the finding and conclusion of this Court that, before the jury answered such issue, some members thereof did tell others that appellant would recover, even though they answered 'No' to that inquiry, and that, subsequently, the vote was unanimous in favor of such a 'No' answer thereto.

> "That such action constitutes jury-misconduct to such an extent as to require a reversal of their findings seems to be well-settled by these, among many other holdings, of our Texas Courts: * * *". (Citing cases.)

It occurs to us that the circumstances of the Biers case serve to distinguish it from the case at bar. The "extended dispute" that is spoken of in the cited case apparently did not occur here. It is not clear how many or to what extent the jurors were affected by the remarks of "some members" of the jury in the Biers case. In the instant case there appears to have been only one juror who made the improper remark, and only one juror who could have been affected by it, i. e., the only one who indicated an inclination toward a "yes" answer that the driver had caused the bus to jerk unnecessarily, but who further stated that in her opinion there was no "evidence" to support such a finding. In the Biers case the "extended dispute" occurred before the jury had made answer to the issue in question, while in the present case there is uncertainty as to just when the improper remark may have been made.

It is believed that certain or all of these distinguishing factors may be applied to the numerous other cases cited as authority in the Biers case.

We do not conceive the law to be that the mere utterance of an improper remark or even an improper discussion before a jury while deliberating will constitute misconduct requiring a new trial. Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62 (S.Ct.1945). The materiality of the remark made, and its probable effect upon the verdict, must be taken into consideration upon motion for new trial. Rule 327, Texas Rules of Civil Procedure, reads in part:

"Where the ground of the motion is misconduct of the jury * * * the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved * * * be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

Speaking of this rule the Supreme Court, in Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, has this to say:

"Under the decisions of this court defining reversible error, as applied to jury misconduct in trials had before the effective date of our new Texas Rules of Civil Procedure, it was held that if the members of the reviewing court had a reasonable doubt as to whether or not jury misconduct, once established, had resulted in injury to the complaining party, reversal must follow. *Such, however, is not the rule as applied to cases tried subsequent to the effective date of our present rules.*" (Emphasis supplied.)

After setting out Rule 327, the Court continues:

"A reading of the above rule will disclose that its effect is to abolish the prior rule of reasonable doubt, and substitute therefor a rule which imposes upon the party asserting misconduct the burden not only of proving by a preponderance of the evidence that such misconduct occurred, but also of showing that such misconduct probably resulted in injury to him. If the evidence is conflicting on the question as to whether or not the misconduct actually occurred, the decision of the trial court either way on that question should be accepted as final. When misconduct is established, the question of injury is one of law for the reviewing court. Under the above-quoted rule both the trial and the reviewing courts have the right to view the matter in the light of the entire record. By the entire record we mean the evidence heard on the motion presenting misconduct, the evidence on the main trial, and any and all other parts of the record which may throw light on the question of injury. Of course, it is never permissible to allow a juror to preserve or destroy his verdict by testifying to the mental processes by which he reached the same, and this rule is not altered in the least by Rule 327, supra. Sproles Motor Freight Lines, Inc., v. Long, Tex.Sup. [140 Tex. 494], 168 S.W.2d 642."

Again, it is said in State of Texas v. Wair, 351 S.W.2d 878 (S.Ct., 1961) that the test to be applied by the appellate court to the finding of the trial court as to whether misconduct did or did not occur is not on the basis of the great weight and preponderance of the evidence, but on the basis of possible abuse of discretion by the trial court, in the absence of which its finding will not be reversed. And further: "Probable injury of a jury's misconduct, once misconduct has been found to have occurred, is a question of law for the trial court and reviewing courts to determine from a review of the entire record * *."

After a careful review of the entire record in the instant case, we are constrained to hold that there is nothing here to justify the granting of a motion for new

trial upon the grounds of misconduct of the jury. We find that, (1) the alleged misconduct was not satisfactorily proved; (2) that even if what transpired in the jury room during deliberations could be construed as misconduct, it was not material; and (3) that it did not reasonably appear that probable injury resulted to the complaining party arising out of any such misconduct complained of, if, in fact, it could be construed from the record that any misconduct actually occurred. We find no abuse of discretion on the part of the trial court in refusing to grant a new trial, and appellant's first point is accordingly overruled.

■ We now turn our attention to appellant's sole remaining point, Point 2, urging that the trial court erred in refusing plaintiff's (appellant's) requested special issue as to whether the bus of appellee gave a sudden and unnecessary jerk. As has been indicated, Special Issue No. 1 was worded as follows:

"Do you find from a preponderance of the evidence, that on March 10, 1961, the driver of defendant's bus, as it approached the bus stop at the intersection of Dyer Street and McKinley Street, *caused* said bus to have a sudden and unnecessary jerk?" (Emphasis supplied.)

To which the jury answered "No".

Plaintiff claimed that the special issue should have inquired whether the bus came to an abrupt stop and whether this abrupt stop was done with an unnecessary jerk which was negligence on the part of the defendant and a proximate cause of the injuries suffered by the plaintiff. Plaintiff submitted requested special issues in the language indicated but we find that there is no such language set out anywhere in plaintiff's pleadings. To quote from these pleadings, plaintiff alleged:

"* * * Defendant's operator *caused* said bus to have a sudden and unnecessary jerk as Plaintiff was attempting to get off of the bus near the bus stop at Dyer and McKinley Street * * * that as a result of the sudden and unnecessary jerk, Plaintiff was thrown to the floor of the bus and seriously injured * * * that Defendant's agent was negligent in *causing* said bus to give a sudden and unnecessary jerk and that said negligence was a direct and proximate result (sic) of Plaintiff's damages and injuries." (Emphasis added.)

We find that the special issue as given by the court is in the exact language of the allegations of plaintiff's petition, and we therefore overrule appellant's second point.

Finding no error in this record, the judgment of the trial court is in all things affirmed.