**Edalene ANDERSON, a feme sole, Appellant,**

v.

**J. Patrick HOOKER, M.D., Appellee.**

**No. 5898.**

Court of Civil Appeals of Texas.

El Paso.

Sept. 27, 1967.

Rehearing Denied Nov. 1, 1967.

236

John J. Watts, William D. Kimbrough, Odessa, for appellant.

William L. Kerr, Kerr, Fitz-Gerald & Kerr, Midland, for appellee.

## OPINION

PRESLAR, Justice.

This is a malpractice suit brought by the appellant against the appellee, asserting numerous counts of negligence in connection with surgery performed by the appellee on the appellant for removal of a cervical disc. It was alleged that the doctor-appellee should not have operated after he observed an X-ray picture showing no bone defect in appellant's neck; operated on her until after heat treatments had been tried, and operated upon her without the administration of added amounts of traction; and it was asserted that the doctor should have run a myelogram test prior to the surgery and applied traction following surgery. Appellant-plaintiff also asserted that the defendant-doctor failed to keep a proper lookout for her safety during performance of the surgery; performed the surgery from the front of her neck instead of the back; removed one of her cervical discs without sufficient diagnostic findings; unnecessarily removed such disc; and failed to make a full disclosure to her prior to surgery of the risks, dangers and complications incident to, and that might be reasonably anticipated from, the surgery. In response to special issues the jury found against plaintiff-appellant on each of the above assertions of negligence, and it also found that there was no failure on the part of the doctor to exercise the care and skill usually conformed to by physicians and surgeons in the area which would constitute negligence; that the operation accomplished the purpose for which it was intended, and that no sum of money was due to be paid to the plaintiff-patient by the defendant-doctor. Based upon the verdict, a take-nothing judgment was entered. We affirm.

Appellant gave her written consent for the surgery to be performed, but maintains that she would not have given such consent had the appellee more fully informed her of the risks and dangers involved, more particularly had he informed her that a stroke or paralysis might result. In her brief before this court, appellant states that the central issue in the trial of this case was whether or not Edalene Anderson had given an informed consent to the operation, and that the point of conflict centered upon whether or not the risk of a stroke was incident to the operation performed on her, and whether or not the defendant failed to conform to the standard medical practice by disclosing to her that a stroke was one of the risks incident to the operation. The defendant-doctor informed the plaintiff of various things concerning the proposed surgery, but he did not inform her that a stroke was one of them, and the evidence is that she had some kind of episode or stroke while in the recovery room following the surgery.

Appellant assigns as error the exclusion of evidence which she says would show that the doctor knew that a stroke was a risk of this operation. The doctor's testimony was that he did not consider a stroke an anticipated complication of the operation. The excluded evidence concerned another patient of the defendant-doctor, one Manon Moore, who had the same type of surgery some two months prior to appellant's operation. The proffered evidence, which was disputed, was that Moore suffered a stroke some 24 hours after surgery. This evidence was in the form of the hospital records of Manon Moore, the testimony of a doctor who had examined him some several months after surgery and was of the opinion that he had suffered a stroke some time after surgery, and the testimony of the defendant elicited on cross-examination. Appellant urges that the evidence was admissible to show the doctor's knowledge that a stroke was one of the things to be expected from this type of surgery, and therefore one of the things of which he should have informed her.

As a generalization, it may be said that every normal human being of adult years has a right to determine what shall be done to his own body, and a pa-

tient's consent is thus a necessary prerequisite to any treatment or operation. And to that may be added that one who gives his consent must have such information regarding the consequences as is necessary to form the basis of an intelligent consent. The duty of the physician to furnish the patient with sufficient information to make an intelligent decision—to disclose risks inherent in proposed treatment or surgery —is recognized. Wilson v. Scott, 412 S.W. 2d 299 (Tex. Feb.1967); Gravis v. Physicians & Surgeons Hospital of Alice, Tex. Civ.App., 415 S.W.2d 674 (n. w. h.). One writer has observed that the reported cases present much confusion as to what risks a physician should disclose to his patient before obtaining consent to operate. Vol. 44 Texas Law Review 799, 800. Both of the above-cited cases quote from the recent opinion by the Supreme Court of Missouri in Aiken v. Clary, 396 S.W.2d 668, 674, as follows:

"We have reexamined this question and have concluded that the question of what disclosure of risks incident to proposed treatment should be made in a particular situation involves medical judgment and that expert testimony thereon should be required in malpractice cases involving that issue. The question to be determined by the jury is whether defendant doctor in that particular situation failed to adhere to a standard of reasonable care. These are not matters of common knowledge or within the experience of laymen. Expert medical evidence thereon is just as necessary as is such testimony on the correctness of the handling in cases involving surgery or treatment. In Fisher v. Wilkinson, Mo., 382 S.W.2d 627, 632, we held: 'Without the aid of expert medical testimony in this case a jury could not, without resorting to conjecture and surmise or by setting up an arbitrary standard of their own, determine that defendants failed to exercise their skill and use the care exercised by the ordinarily skillful, careful and prudent physician acting under the same or similar circumstances.' And, as we said in Pedigo v. Roseberry, 340 Mo. 724, 736, 102 S.W.2d 600, 607: 'Juries should not be thus turned loose and privileged to say, perchance, the method of treating an injury * * * (or an illness) was negligent notwithstanding, for instance, the uncontradicted competent testimony establish(ing) that the uniformly adopted practice of the most skillful surgeons (or physicians) had been followed.' The question is not what, regarding the risks involved, the juror would relate to the patient under the same or similar circumstances, or even what a reasonable *man* would relate, but what a reasonable *medical practitioner* would do. Such practitioner would consider the state of the patient's health, the condition of his heart and nervous system, his mental state, and would take into account, among other things, whether the risks involved were mere remote possibilities or something which occurred with some sort of frequency or regularity. This determination involves medical judgment as to whether disclosure of possible risks may have such an adverse effect on the patient as to jeopardize success of the proposed therapy, no matter how expertly performed."

■■ Appellant's complaint with regard to the duty to warn is that the court excluded evidence that a prior patient of her doctor had had a stroke following surgery of the kind which was performed on her. Whether the doctor should have told her of this specific thing which happened to his other patient is not for us to say. "What" the doctor should have disclosed to his patient depends not on a standard set by courts, but by the medical practitioners of the area, so that it was appellant's burden, as plaintiff, to say what the standard was, through testimony of medical practitioners. In Govin v. Hunter,

374 P.2d 421, the Supreme Court of Wyoming held:

"Whether or not a surgeon is under a duty to warn a patient of the possibility of a specific adverse result or a proposed treatment depends upon the circumstances of the particular case and upon the general practice followed by the medical profession in the locality; and the custom of the medical profession to warn must be established by expert medical testimony." (Citing authorities from other jurisdictions).

And in Wilson v. Scott (supra), our Supreme Court held that the plaintiff had the burden to prove by expert medical evidence what a reasonable medical practitioner of the same school and same or similar community, under the same or similar circumstances, would have disclosed to his patient about the risks incident to a proposed treatment. We are of the opinion that the medical standard which was established in the case before us did not require the defendant to disclose that a prior patient suffered a specific adverse result; therefore, no error was committed by the court in excluding the proferred evidence. And if error was committed, it was not such as resulted in material harm to appellant, in view of the fact that the medical standard which was established so fitted that given by the court in its charge. Nor can we ignore the difference in the facts as to patient Moore and patient Anderson, which are such that only a medical expert could say that what one experienced as a result of surgery the other would experience. Manon Moore was an older man with a history of the trouble which he experienced, and his trouble did not occur during the surgery procedure and was not of the exact nature of appellant's. The appellant was a woman 32 years of age at the time of her surgery, whose only health problem was a history of headaches. When we say that a doctor has a duty to disclose risks which are involved in a contemplated operation, we must keep in mind that how the physician discharges his obligation to a patient involves primarily a question of medical judgment.

The expert medical testimony as to the standard in the case before us was in general terms. No witness was asked about a medical standard for disclosure to the patient of a specific adverse result, and no medical witness testified about a medical standard for disclosure to a patient of the surgeon's experience with another patient. Relied on by appellant as establishing the medical standard is the following question and answer, propounded to her medical witness, Dr. Rader:

"Q    Is it customary to inform a patient that you are getting ready to put them under—the whatever it is you put them under—and operate on them with the knife and what the hazards of that operation are going to be—fully and completely so that they can make an informed and an intelligent choice as to whether they want to go on suffering or whether they want to try to take the chances on the cure?"

\*     \*     \*     \*     \*     \*

"A    It is our practice and it is becoming increasingly so in recent years to inform the patient upon whom we are going to carry out the procedure, and primarily this applies to surgery, as to the various things which might happen. I think that it is virtually impossible to go into all of the various complications that might occur but we do try to inform them of those things which might, with some possibility, happen, which in this particular operation, we know, has happened in the past which might be of an undesirable character the patient would not want, and we try as much as we can to make that clear because, after all, it is the patient who must make the final decision, I think, on so-called electrosurgery."

And the testimony of Dr. Raeburn C. Llewellyn, a witness for the defendant, who testified as follows:

> "Q As a doctor, isn't it customary to inform a patient of all the possible risks of any operation that you are going to perform?
>
> A Yes, it is true."

The court submitted, without objection, the following issue and instruction to the jury:

> "Do you find from a preponderance of the evidence that defendant, J. Patrick Hooker, failed to make a full disclosure prior to surgery to Edalene Anderson of the risks, dangers and complications incident to and that might be reasonably anticipated from the operation?
>
> You are hereby instructed unless you find from a preponderance of the evidence that Edalene Anderson at the time she executed the consent form executed in evidence in this case was informed as to the dangers to be anticipated as a result of the operation in question, then you will not find that the plaintiff consented to the operation.
>
> In this connection, the Court charges you, as a matter of law, that the defendant, Dr. J. Patrick Hooker, was under a duty to make a full disclosure of the nature of the operation, the processes contemplated, and the danger and hazards of the operation.
>
> Answer 'Yes' or 'No.' "

The jury answered "No."

These matters were presented fully to the trial court in an Amended Motion for New Trial, and we see no abuse of discretion in overruling them.

■ Appellant assigns as error numerous findings of the jury in response to special issues as being against the great weight and preponderance of the evidence. When such complaint is made we must consider and weigh all of the evidence material to the issue, and set aside the verdict and remand for a new trial if we conclude that the verdict or finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. All of the evidence is considered—that which supports the verdict as well as that which is against it. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. A careful examination of the Statement of Facts leads us to the conclusion that none of the findings of the jury complained of is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

■ Appellant assigned jury misconduct on her Amended Motion for New Trial, and attached an affidavit of one of the jurors to such motion. Appellee attached to his reply to the Amended Motion for New Trial an affidavit by the same juror. The testimony of the jurors on the Amended Motion for New Trial is not a part of the record before us, but the affidavits and pleadings are, so that it is clear that the question raised was whether or not misconduct actually occurred. The trial court overruled the motion and, in the absence of express finding, it must be presumed that the trial judge found that there was no misconduct.

■ Rule 327, Texas Rules of Civil Procedure, governs the requirements for new trials based on jury misconduct, and it is well settled that the complaining party must establish under that rule: (1) that such misconduct did in fact occur, and (2), that injury probably resulted to him. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259. If either requirement is answered in the negative, then the complaining party has not met the burden placed on him by Rule 327.

■ In the case before us, the trial judge having found that, as a matter of fact, there was no misconduct, the question for this court is whether such finding is

an abuse of discretion. Viewing the entire record in this case, we are of the opinion that there is support in the evidence for the finding of the trial court, and that such finding is not an abuse of discretion. In the absence of an abuse of discretion, this court is bound by such finding. State v. Wair, 163 Tex. 69, 351 S.W.2d 878; Selmikeit v. El Paso City Lines, Tex.Civ.App., 365 S.W.2d 840 (ref., n. r. e.).

Each assignment of error is overruled and the judgment of the trial court is affirmed.