COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-198-CR

 

 

KENNETH WAYNE DOWNS                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.                   
Introduction








A jury convicted Appellant Kenneth Wayne Downs for
aggravated sexual assault of a disabled person. 
Appellant raises two points on appeal. 
First, Appellant argues that he was denied effective assistance of
counsel because his trial counsel failed to object to possible hearsay
statements, failed to request an evidentiary hearing regarding whether a
witness was qualified as an expert, and failed to request certain defenses be
included in the jury charge.  In his
second point, Appellant argues that he was improperly precluded from asserting
the medical care defense to aggravated sexual assault in violation of his right
to equal protection of the law.  We
affirm. 

II.                
Factual and Procedural Background

J.G. was admitted to Huguley Memorial Medical
Center on October 14, 2003, due to an accelerated heart rate.  Prior to this time, J.G. had suffered
multiple strokes and had a pacemaker implanted. 
She was placed in a progressive care unit and monitored regularly.  While in the progressive care unit, J.G.=s husband normally stayed with her, but
he was not present on the night of October 21, 2003, when the alleged events
that gave rise to this case occurred. 
During that night, J.G.=s
heart monitor recorded that her heart rate was 152 beats per minute.  The normal hospital routine was for a
technician to notify the nurse in charge of the patient.  On that night, the nurse in charge of J.G.
was Appellant.  Unable to contact
Appellant, the technician on duty notified another nurse, who went to check on
J.G.  When the nurse arrived at J.G.=s room, he knocked, opened the door,
and observed Appellant already in the room standing behind J.G..  Both Appellant and J.G. were facing away from
the nurse, and J.G. was lying on her side. 
The nurse testified that he could not see what Appellant was doing but
assumed Appellant was cleaning up an episode of incontinence.  The nurse asked whether Appellant needed
assistance, to which Appellant responded he did not. 








The next day, J.G.=s
daughter visited her.  J.G. cried and
told her daughter that Appellant had inserted some unknown objectCroughly the size of a cell phoneCin her anus the night before and that
it had caused her great pain.  J.G.
testified that she did not cry out when the event occurred because she feared
for her safety.  She also testified that
later on that same night, Appellant had returned and, after having taken her to
the bathroom, Appellant rubbed lotion on her and penetrated her vagina with his
finger.  J.G. testified that she was not
physically able to stop Appellant and that he had given her injections
following both events, which caused her to become sleepy.  J.G.=s
daughter reported J.G.=s
allegations to the progressive care supervisor. 
The supervisor notified the police. 
J.G. repeated to the investigating detective that Appellant had touched
and penetrated both her anus and vagina. 
J.G. was taken to the emergency room for a rape exam that was
inconclusive.  








The grand jury indicted Appellant for aggravated
sexual assault of a disabled individual in a two-count indictmentCone count alleging anal penetration
with an unknown object and the other count alleging vaginal penetration with
Appellant=s
finger.  At trial, Appellant testified
that he had penetrated J.G.=s
anus, but that it was done using a rectal thermometer and with her consent in
order to accurately measure her temperature. 
He denied ever having touched her vaginal area or applying lotion to
her.  Appellant also testified that he
would not have performed a rectal temperature reading without J.G.=s consent.  

At trial, the supervisor of the progressive care
unit testified, without objection, to her conversation with J.G., including
what J.G. had said regarding these alleged events.  Moreover, the detective investigating the
events testified, without objection, concerning statements made to him during
his investigation by both J.G.=s
daughter and the progressive care supervisor. 
The detective also testified, without objection, that based on his Aexperience, training, and knowledge@ gained through his investigation of
roughly 300 sexual assault cases that an inconclusive rape exam was neither
unusual nor conclusive of whether a sexual assault had occurred.  A jury found Appellant guilty of count oneCaggravated sexual assault of a disabled
person.  The trial court declared a
mistrial regarding count two and sentenced Appellant to twenty years= incarceration.  Appellant then filed this appeal. 

III.              
Ineffective Assistance of Counsel

A.                
Hearsay and the Failure to Request a Hearing

In part of his first point, Appellant argues that
he was denied effective assistance of counsel because his trial counsel failed
to object to possible hearsay statements and failed to request a hearing to
determine whether a witness was qualified as a medical expert.  We disagree. 









We apply a two-pronged test to ineffective
assistance of counsel claims.  Strickland
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, appellant must show that counsel=s performance was deficient; second,
appellant must show the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687, 104 S.
Ct. at 2064; Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim. App.
1999).








When evaluating the effectiveness of counsel under
the first prong, we look to the totality of the representation and the
particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether
counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  Strickland, 466 U.S. at 688-89, 104 S.
Ct. at 2065.  A[C]ounsel
is strongly presumed to have rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional judgment.@ 
Id. at 690, 104 S. Ct. at 2066. 
An allegation of ineffective assistance must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness.  Thompson, 9
S.W.3d at 814.  Our scrutiny of counsel=s performance must be highly
deferential, and every effort must be made to eliminate the distorting effects
of hindsight.  Strickland, 466 U.S.
at 689, 104 S. Ct. at 2065.  When the
record is silent as to possible trial strategies employed by defense counsel,
we will not speculate on the reasons for those strategies.  See Jackson v. State, 877 S.W.2d 768,
771 (Tex. Crim. App. 1994).

In his motion for new trial, Appellant did not
allege ineffective assistance of counsel, which would have afforded the trial
court the opportunity to conduct a hearing as to these alleged failures.  As such, the record is not sufficiently
developed to allow us to do more than speculate as to the strategies of
Appellant=s trial
counsel.  See Jackson, 877 S.W.2d
at 771.  Thus, we cannot say that
Appellant was denied effective assistance of counsel due to trial counsel=s lack of objection to alleged hearsay
statements or failure to request a hearing on the witness= qualifications.  Appellant has a more appropriate remedy in
seeking a writ of habeas corpus to allow him the opportunity to develop
evidence to support his complaints.  See
Robinson v. State, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000) (noting
that a postconviction writ proceeding is the preferred method for gathering the
facts necessary to substantiate an ineffective assistance of counsel claim). 

B.                
Necessity and Medical Care Defenses

In the remaining part of his first issue,
Appellant argues that he was denied effective assistance of counsel because his
trial counsel failed to request that instructions on the defenses of necessity
and medical care be included in the jury charge.  We disagree. 









Generally, a defendant is entitled to a jury instruction
on any defensive issue raised by the evidence.  Granger v. State, 3 S.W.3d 36, 38 (Tex.
Crim. App. 1999). This right exists whether that evidence is weak or strong,
unimpeached or contradicted, and regardless of what the trial court may or may
not think about the credibility of the evidence.  Hamel v. State, 916 S.W.2d 491, 493 (Tex.
Crim. App. 1996).  If the evidence,
viewed in a favorable light, does not establish the defensive issue, an
instruction is not required.  Dyson v.
State, 672 S.W.2d 460, 463 (Tex. Crim. App 1984).  

These general rules become more distinct in the
realm of effectiveness of counsel.  See
Vasquez v. State, 830 S.W.2d 948, 950-51 (Tex. Crim. App. 1992).  The failure to request a defense violates the
first prong of Strickland if the evidence of a particular case
demonstrates that the failure to seek an instruction on a given defense
constitutes unacceptable trial tactic. See id. (holding that testimony
by defendant clearly indicated he had acted out of a perceived necessity and
therefore it was unacceptable trial tactic to fail to request an instruction on
necessity).  But if a defendant=s own testimony negates a defense,
counsel=s failure
to seek an instruction is not a deficiency in trial counsel=s performance.  Jackson v. State, 491 S.W.2d 155, 156
(Tex. Crim. App. 1973).  Furthermore,
trial counsel=s failure
to request a defense is not ineffective assistance of counsel if a defense is
neither recognized by statute or the common law.  See Vasquez, 830 S.W.2d at 950.








1.                 
The Defense of Necessity

Appellant argues that he was entitled to an
instruction on the defense of necessity. 
We disagree.  Under the defense of
necessity, a defendant=s
actions are justified if the actor reasonably believes the conduct is immediately
necessary to avoid imminent harm, the desirability or urgency of avoiding the
harm clearly outweighs the harm sought to be prevented by the laws proscribing
the conduct, and a legislative purpose to exclude the justification does not
otherwise plainly appear.  See Tex. Penal Code Ann. ' 9.22 (Vernon 2003).  AImminent@ means Aready
to take place, near at hand, impending, hanging threateningly over one=s head, menacingly near.@  Devine v. State, 786 S.W.2d 268, 270 (Tex.
Crim. App. 1989).  Harm is imminent when
there is an emergency situation and the actor=s
conduct is immediately necessary to avoid that harm.  Jackson v. State, 50 S.W.3d 579, 595
(Tex. App.CFort
Worth 2001, pet. ref=d).  In other words, a split‑second decision
would be requiredCwithout
time to consider the lawCfor
a danger to be considered imminent.  Id.  Furthermore, the defense of necessity requires
substantially admitting the committed offense or at a minimum admitting the
conduct that forms that offense.  See
Young v. State, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999); see also
Hubbard v. State, 133 S.W.3d 797, 801 (Tex. App.CTexarkana
2004, pet. ref=d).  








Appellant was not entitled to the defense of
necessity because his own testimony negated the defense.  It cannot be said that Appellant
substantially admitted the alleged offense or the conduct necessary to form the
alleged offense.  Appellant testified
that he had J.G.=s consent
to insert a thermometer into her anus and that is what he did.  Even if this court were to assume that a
thermometer was the equivalent of an unknown object, it still cannot be said
that Appellant admitted the alleged offense because Appellant=s testimony was predicated on his
having received J.G.=s
consent.  Under the penal code,
aggravated sexual assault is founded on not having the alleged victim=s consent.  See Tex.
Penal Code Ann. ' 22.021
(Vernon 2003). 

Moreover, even if Appellant had substantially
admitted to the offense, he was still not entitled to an instruction on the
defense of necessity.  Appellant
testified that he believed his initial taking of J.G.=s
temperature using an oral thermometer was inaccurate.  He further testified that he was concerned
that a potentially high temperature could be indicative of serious
complications related to J.G.=s
recently installed pacemaker and that he wanted a more accurate reading by
using a rectal thermometer.  But
Appellant also testified he would not have taken J.G.=s temperature rectally without her
consent.  If, as Appellant testified, he
would not have taken J.G.=s
temperature rectally without her consent, the immediacy and split-second
circumstances required to be entitled to the defense of necessity did not
exist.  








Because Appellant=s
own testimony negates the defense of necessity, we hold that there was no
deficiency in trial counsel=s
not seeking an instruction on the defense of necessity.

2.                 
The Medical Care Defense

Appellant also argues he was entitled to an
instruction on the medical care defense found in section 22.011(d) of the Texas
Penal Code.  Tex. Penal Code Ann. ' 22.011(d)
(Vernon Supp. 2007).  He contends that
trial counsel=s failure
to request an instruction on this defense rendered his trial counsel=s assistance ineffective.  We disagree. 


Texas Penal Code section 22.011(d) states
that it is a defense to sexual assault if the conduct engaged in Aconsisted of medical care for a child
and did not include any contact between the anus or sexual organ of the child
and the mouth, anus, or sexual organ of the actor or a third party.@[1]  This defense was unavailable to Appellant for
a simple reasonCthis
defense is available only in the setting of the potential sexual assault of a child.  Id.  
J.G. is not a child.  Appellant
was not deprived of effective assistance of counsel because trial counsel chose
not to request a defense that was inapplicable to the facts of this case.  We therefore overrule Appellant=s first point in its entirety. 

 








IV.             
Equal Protection and the Medical Care Defense

In his second point, Appellant argues that the
medical care defense=s
limited application to cases involving children is a violation of equal
protection. Appellant argues that, because medical care providers who perform
what otherwise would be sexual assault on disabled persons are not also
entitled to use the medical care defense to the same potential offenses
regarding children, he is being treated differently.  That is, Appellant argues, he is similarly
situated to medical care providers who perform medical treatment on childrenCit just so happens he performed medical
treatment on a disabled person.  And
because children and disabled persons are often treated equivalently
under the law, he is a similarly situated medical care provider and is being
treated differently than other medical care providers simply because the victim
was disabled and not a child.  We
disagree. 








The United States Constitution provides that no
state shall deny any person within its jurisdiction the equal protection of the
laws. U.S. Const. , amend XIV, ' 1.  Our state constitution provides that all free
persons have equal rights. Tex. Const.
art. I, ' 3.  Generally, the Texas equal protection
provision corresponds to the federal provision. 
Rose v. Doctors Hosp., 801 S.W.2d 841, 845 (Tex. 1990).  Because Appellant does not argue that his
protection is greater under the Texas constitution than under the federal
Constitution, his argument will be addressed under the federal Constitution.  See Arnold v. State, 873 S.W.2d 27, 33
(Tex. Crim. App. 1993); see also Garay v. State, 940 S.W.2d 211, 216
(Tex. App.CHouston
[1st Dist.] 1997, pet. ref=d).









In addressing constitutional challenges, we begin
by presuming the statute is valid and construe the statute in favor of its
constitutionality.  Smith v. State,
149 S.W.3d 667, 670 (Tex. App.CAustin
2004, pet. ref=d)
(citing Smith v. State, 898 S.W.2d 838, 847 (Tex. Crim. App.
1995)).  The challenger has the burden of
establishing unconstitutionality.  Wilson v. State, 44 S.W.3d 602, 604 (Tex.
App.CFort
Worth 2001, pet. ref=d).
The principle of equal protection guarantees that all persons similarly
situated should be treated alike. City of Cleburne v. Cleburne Living Ctr.,
473 U.S. 432, 439, 105 S. Ct. 3249, 3253‑54 (1985); Mayhew v. Town of
Sunnyvale, 964 S.W.2d 922, 939 (Tex. 1998). 
To prevail on an equal protection claim, the party complaining must
establish two elements:  (1) the party
was treated differently than other similarly situated parties; and (2) the
party was treated differently without a rational basis by the government.[2]  Smith, 898 S.W.2d at 847; Henderson,
962 S.W.2d at 560; see also Johnson v. Rodriguez, 110 F.3d 299, 306 (5th
Cir. 1997).  Appellant fails to
establish either of these elements.

Under this first element, it is axiomatic that the
Equal Protection Clause does not require things different in fact be treated in
law as though they were the same.  Smith,
898 S.W.2d at 847; see also Racine Charter
One, Inc. v. Racine Unified Sch. Dist., 424 F.3d 677, 681 (7th Cir. 2005).  Differences based
on various factual traits, circumstantial nuances, and peculiarities which by
virtue of their differences make them amenable to disparate treatment are not a
basis for an equal protection claim.  Id. 








It is the factual traits and
circumstantial nuances created by the distinction between a disabled person and
a child that govern the application of the medical care defense, not who
participates in prohibited conduct.  See
Tex. Penal Code Ann. ''  22.011(c)(1), 22.011(d), 22.021(d), 22.04(c) (Vernon Supp.
2007).  All persons found guilty of having
penetrated the anus of a disabled person without their consent are guilty of
aggravated sexual assaultCregardless
of who engaged in the conduct.  See
Tex. Penal Code Ann. ' 22.021.  Furthermore, the
medical care defense found in sections 22.011(d) and 22.021(d) of the Texas
Penal Code is available to all persons.  See
id. '' 22.011(d), 22.021(d).  It is
a defense to what otherwise would be the aggravated sexual assault of a child
if the conduct was performed for the purpose of providing proper medical care
for that childCregardless
of who provided the medical care.  Id.
'' 22.011(d), 22.021(d).  Because
the conduct of aggravated sexual assault is prohibited by all persons and the
medical care defense is available to all persons, there is no equal protection
concern.  The distinction as to when the
medical care defense applies is based on who the act is committed against, not
who commits the act.  

Moreover, Appellant fails to
overcome the second prong of an equal protection analysis.  Appellant contends that the State has no
rational basis for allowing the medical care defense for medical care providers
who perform treatment on children but not allowing it when disabled persons are
involved. We disagree.  

Those attacking the
rationality of a legislative classification have the burden to negate every
conceivable basis that might support it. Anderer v. State, 47 S.W.3d 60,
66 (Tex. App.CHouston
[14th Dist.] 2001, pet. ref=d).  We will uphold a statute as
long as it implements any rational purpose, even if the legislature never
considered the purpose when enacting the statute.  Id. at 67, n.4.  For constitutional purposes, it is irrelevant
whether the conceived reason for the challenged distinction actually motivated
the legislature.  Id.








The legislature has a
legitimate interest in making the distinction that the medical care defense is
available when children are involved but not when the disabled are involved.  See Henderson, 962 S.W.2d at 562
(holding the legislature has legitimate and compelling interest in protecting
well-being of children).  As pointed out
by the State, the general rule in Texas is that a minor cannot autonomously consent
to medical or surgical treatment.  See
Little v. Little, 576 S.W.2d 493, 495 (Tex. Civ. App.CSan Antonio 1979, no writ).  In
contrast, adultsCeven those
who are disabledCare
generally able to make their own decisions about submitting to medical
treatment.  See Anderson v. Hooker,
420 S.W.2d 235, 237-38 (Tex. Civ. App.CEl Paso 1967, no writ). 
Furthermore, as the State points out, a person=s status as disabled does not categorically mean incapable of giving
consent; rather, medical care consent is based upon the decision-making capacity
of the patient.  See Tex. Health & Safety Code Ann. ' 313.002(3) (Vernon Supp. 2007).  
The facts of this present case illustrate this point.  J.G. signed a number of forms consenting to a
broad range of medical treatments despite her disabled status. 

We hold that the legislature=s decisionCto allow the
medical care defense for medical care providers who perform treatment on
children but not allowing it when disabled persons are involvedCis rationally related to a legitimate state interest.[3]  We overrule Appellant=s second point.








 

V.                
Conclusion

Having
overruled both of Appellant=s
points, we affirm the trial court=s
judgment.  

 

 

 

ANNE
GARDNER

JUSTICE

 

PANEL A:       HOLMAN,
GARDNER, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED:  December 6, 2007        











[1]This
medical care defense is also available by reference to aggravated sexual
assault.  See Tex. Penal Code Ann. ' 22.021(d)
(Vernon 2003).





[2]If,
as in this case, a statutory classification does not interfere with a
fundamental right or discriminate against a suspect class, it only needs to be
rationally related to a legitimate governmental purpose to survive an equal
protection challenge.  See Henderson
v. State, 962 S.W.2d 544, 560 (Tex. Crim. App. 1997) This is the Arational
basis test.@  Id. 
We agree with both parties that a fundamental right is not involved and
that the rational basis test applies to the facts of this case.





[3] As
the State points out, it is difficult to understand how holding the medical
care defense unconstitutional would help Appellant.  If the medical care defense did violate equal
protection, the remedy would appear to be that no one, including Appellant,
would be able to use the medical care defense. 
It would not be this Court=s duty to expand the statute
to be available to Appellant but rather strike the statute completely.  See Smith, 898 S.W.2d at 847
n.11.