In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4155

Gilbert Purze and Jerome Purze,

Plaintiffs-Appellants,

v.

Village of Winthrop Harbor,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 8481--James B. Zagel, Judge.

Argued September 24, 2001--Decided April 9, 2002

Before Posner, Ripple, and Kanne, Circuit
Judges.

Kanne, Circuit Judge.  Plaintiffs Gilbert
and Jerome Purze sued the Village of
Winthrop Harbor, Illinois ("the Village")
under 42 U.S.C. sec. 1983, alleging that
the Village denied them equal protection
of the laws by refusing to approve
several preliminary plats of a
subdivision plan. The district court
entered summary judgment in favor of the
Village, finding that the Purzes failed
to demonstrate that similarly-situated
property owners were treated more
favorably or to demonstrate that the
Village acted out of ill will. We affirm.

I.  History

  Beginning in January 1998, Gilbert and
Jerome Purze sought to develop property
that they owned in a rural subdivision of
the Village. Pursuant to the Village
Subdivision Code, in order to subdivide
property, a property owner must submit to
the Village Board ("the Board"), and have
approved by the Board, a preliminary plat
and a final subdivision plat. While the
Planning and Zoning Board of Winthrop
Harbor ("PZB") may make recommendations
to the Board regarding variance requests
and subdivision plats, all plats must
comply with the regulations contained in
the Subdivision Code. Interpretations of

those regulations are reserved to the Board and the Board reserves the right to vary and make exceptions to the regulations in cases of hardship, provided that the variances or exceptions are in substantial conformance with the standards of design prescribed by the Subdivision Code.

In addition to the Village Subdivision Code, the Village also had a Zoning Code in effect. The Purzes' property was zoned R-5 (rural zoning). The Purzes initially requested that their property be re-zoned from R-5 (rural zoning) to R-3 (residential zoning). However, at a public hearing held by the PZB, citizens in attendance strongly opposed the requested re-zoning, voicing concern that the rural nature of the existing neighboring properties would be negatively impacted by the requested re-zoning. In light of the opinions voiced at this public hearing, the PZB recommended against re-zoning the Purzes' property. The Board unanimously affirmed its recommendation.

Following their failed attempt to get their property re-zoned, the Purzes retained an engineer, Joseph Hammer, to help them prepare a resubdivision plat in compliance with R-5 zoning. The Purzes and Hammer developed a preliminary plat. However, this first preliminary plat did not fully comply with the Village Subdivision Code. Specifically, this preliminary plat contained lots with double frontages that were expressly prohibited by the Subdivision Code. While presenting the plat to the PZB, Hammer acknowledged the plat's failure to comply with the Subdivision Code, but he explained to the PZB that he intended to request a variance from the Board. Hammer, however, never requested such a variance. During this initial presentation to the PZB, the PZB also expressed concerns about water run-off and detention area issues, traffic issues, and exits out of and entrances into the proposed development. Eventually, the PZB recommended against approval of the preliminary plat. The Board agreed, further noting that the preliminary plat did not comply with the Subdivision Code in several other ways. For instance, the width and square footage of several lots were too small and easements for maintenance vehicles

were less than the required 20 feet.

The Purzes submitted a revised plat to the PZB. This revised plat, however, still contained two lots that were too small and maintenance easements that were less than 20 feet. Additionally, this revised plat had a block in excess of 1,200 feet, in violation of the Subdivision Code. Further, the Village's Fire Chief and Police Chief both expressed concerns about access to the proposed development and requested consideration of a second exit. Despite these concerns, the PZB voted to approve the revised plat, subject to certain stipulations: a north/south road was to be added to the east end of the property, five lots were to be redrawn, and a 20-foot easement was to be added to the plat. The Board, however, declined to follow the PZB's recommendation and was not willing to approve the revised plat even subject to the stipulations. The Board did, however, agree to waive the cost to the Purzes of submitting another revised plat for further consideration.

The Purzes decided to submit a second revised plat to the PZB. Several lots were still too small, and the maintenance easements were still less than the required 20 feet, but the second revised preliminary plat added the requested north/ south road. This road, however, created a new problem for the Purzes because it was not in compliance with the Subdivision Code. Specifically, the road was offset and created a road jog of less than 125 feet. While the PZB, on a divided vote, approved the second revised preliminary plat, the Board rejected the PZB's recommendation. In rejecting the Purzes' second revised preliminary plat, the Board specifically noted that the restriction regarding the required length of a road jog had been strictly enforced in the past, including against a Village school.

Subsequently, the Purzes filed this lawsuit against the Village alleging, among other things, that they were denied equal protection of the laws. The district court granted summary judgment in favor of the Village, explaining that the Purzes failed to present "sufficient evidence to allow a reasonable jury to find that similarly-situated property owners were treated more favorably than

Plaintiffs." Furthermore, the district court explained that the Purzes' allegations of ill will or animus, "even when taken together, do not come close to the degree required . . . to state an equal protection claim in a class of one case." On appeal, the Purzes argue that the district court improperly required them to prove (1) that more than one other similarly-situated person was treated more favorably, and (2) that the Village acted out of personal ill will. Moreover, the Purzes claim that even if they are required to show personal ill will, the record sufficiently creates a question of fact regarding the Village's ill will, precluding the entry of summary judgment.

## II. Analysis

We review a grant of summary judgment de novo, viewing all of the facts, and drawing all reasonable inferences therefrom, in favor of the nonmoving party. See Furnish v. SVI Sys., Inc., 270 F.3d 445, 448 (7th Cir. 2001). "[A] complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The Purzes proceed under a "class of one" Equal Protection theory. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 n.*, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) ("[T]he number of individuals in a class is immaterial for equal protection analysis."). To succeed on their class of one claim, the Purzes must demonstrate that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Cruz v. Town of Cicero, 275 F.3d 579, 587 (7th Cir. 2001) (quoting Olech, 528 U.S. at 564). Furthermore, "to make out a prima facie case the [Purzes] must present evidence that the defendant deliberately sought to deprive [them] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000).

In order to succeed, the Purzes must

demonstrate that they were treated differently than someone who is prima facie identical in all relevant respects. See Ind. State Teachers Ass'n v. Bd. of Sch. Comm'rs, 101 F.3d 1179, 1181–82 (7th Cir. 1996). After reviewing the record, we agree with the district court and find that the Purzes failed to demonstrate this essential element of their claim. The Purzes rely on comparisons with three other developments in the Village to support their assertion that other similarly-situated individuals were treated more favorably. The allegedly comparable individuals, however, are not identically situated in all relevant respects rationally related to the government's mission. See id. In Ciechon v. City of Chicago, 686 F.2d 511, 522–24 (7th Cir. 1982), two paramedics were considered by this court to be similarly situated in all relevant respects. Both paramedics had experienced the same set of circumstances, and were equally responsible for the assessment, treatment, and the welfare of the patient, yet only one paramedic was disciplined after the death of a specific patient. See id. Conversely, the allegedly similarly-situated individuals in this case requested different variances than the Purzes requested; submitted their plats during different time periods; and had their plat requests granted by different and previous Boards. Cf. Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000) (finding that "[d]ifferent employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently").

For example, the Purzes claim that the property directly east of their property, the Oaks, used cul-de-sacs that do not conform to the Subdivision Code and has a block measuring in excess of 1,300 feet in violation of the Subdivision Code. The Purzes, however, cannot establish their prima facie case by referring to a development with variances from the Subdivision Code of a kind not requested by the Purzes and with variances that were requested under circumstances very different from the Purzes' present situation. The Purzes never requested

variances for cul-de-sacs, as did the Oaks. Additionally, the Oaks was developed over 20 years ago and the topography of the Oaks differs greatly from the topography of the Purzes' property. The Oaks needed to fashion its plat around two ravines. The Purzes are not contending with similar circumstances.

As a second example, the Purzes' comparisons with another subdivision, the Covenant Cove Subdivision, also does not establish that other similarly-situated individuals were treated more favorably. Although the Covenant Cove Subdivision contains lots with double frontages, the Purzes never actually requested a variance for double frontages from the Board. Hammer suggested that he was going to make such a request, but no request was ever submitted. Additionally, the Purzes' preliminary plat, which contained the double frontages, also failed to comply with the Subdivision Code in several other respects, for example, several lots were too small and the easements for maintenance vehicles were too small.

III.  Conclusion

For the foregoing reasons, we find that the Purzes have failed to demonstrate that similarly-situated individuals were treated more favorably, and therefore, we AFFIRM the judgment of the district court.