# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-1486

BARBARA TUFFENDSAM,

*Plaintiff-Appellant*,

*v.*

DEARBORN COUNTY BOARD OF HEALTH, *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. NA 02-92-C H/H—**David F. Hamilton**, *Judge.*

_____

ARGUED SEPTEMBER 20, 2004—DECIDED OCTOBER 15, 2004

_____


Before POSNER, KANNE, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff in this civil rights suit against a county health board and its members bought a house that had a septic tank rather than being connected to the municipal sewer system. Concerned that the septic tank might no longer be working properly, she negotiated a reduction in the price of the house that would help her defray the expense of her share of the cost of building a line that would connect her and her neighbors' houses to the municipal sewer system.

Unbeknownst to her, more than two years earlier the county health board had discovered that the septic tank was indeed not working properly—that sewage was leaking from it—and had ordered the then-owner of the house to abate the sewage discharge within 90 days. He failed to do so and the board issued another, similar order, giving him another 30 days to comply. He failed to comply and the board failed to follow up. But after the plaintiff bought the house, the board finally woke up, and it began legal proceedings against her to get the problem corrected. Her neighbors refused to contribute to the cost of a sewer line and the plaintiff was unwilling to pay the entire cost ($40,000) herself. To place pressure on the neighbors, she complained to the board that their septic tanks were doubtless also leaking. The board investigated, agreed, and brought proceedings against them as well. Before waiting to see whether these proceedings would induce them to join with her in paying for a sewer line, she brought this suit against the board. The suit charges that by failing to get the previous owner to correct the problem and by failing to pursue the neighbors with the same vigor that it was pursuing her, the board deprived her of property without due process of law and also denied her the equal protection of the laws, all in violation of the Fourteenth Amendment. She seeks damages plus an order that the board buy her house from her and, presumably in the alternative, enforce the sanitation laws against the neighbors so that they'll be induced to contribute to the cost of building a sewer line. There are many objections to her suit, but we can limit our discussion to two.

The Constitution is, with immaterial exceptions, a charter of negative rather than positive liberties. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989). It limits the powers of government but does not give people legally enforceable rights to demand public services and to

obtain damages or other legal relief if the government fails to provide them. The value of the plaintiff's house has been impaired for want of an adequate system for disposing of wastes. Had the county health board been on its toes the problem might have been corrected without cost, or at less cost, to the plaintiff, so she has been injured by laxity in law enforcement. But such laxity does not give rise to a constitutional claim.

*DeShaney* might seem distinguishable on the ground that the board caused in a direct sense, rather than merely failed to prevent (and thus "caused" in only an attenuated sense), the loss of value by bringing legal proceedings against Tuffendsam to abate the discharge—that were it not for laws against the open discharge of sewage, she could live in peace with her defective sewer system, spewing sewage into the surrounding land. And it is true that a government agency that places a person in peril cannot avoid responsibility if it fails to protect the person against the peril. *Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1019 (7th Cir. 2003); *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993); *Morse v. Lower Merion School District*, 132 F.3d 902, 907 (3d Cir. 1997); *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). But the fact that public health laws forbid discharging sewage into land and groundwater does not make the public health authorities responsible for the consequences of a homeowner's having a defective septic tank. The health board was not the author of the sewage discharge.

But the root objection to cases of this kind, as noted by the district judge, is simply the infeasibility of judicial review of law enforcement. To evaluate the gravity, the unreasonableness, the gratuitousness of the county health board's failure to cause a previous owner of the plaintiff's house to abate the discharge of sewage, or of the board's failure to induce through prompt and vigorous legal action the neighbors to

contribute to the expense of building a sewer line, would place the federal courts in control of sanitation in Dearborn County, Indiana, responsible for telling the County's public health officers how to allocate their limited time and money among the various public health problems clamoring for their attention. Judge Hamilton would *be* the Dearborn County health board.

This point also dooms the plaintiff's equal-protection claim. She contends and for purposes of this appeal we accept that the county health board is enforcing the public health laws more zealously against her than against either the previous owners of her house or their (now her) neighbors. There is no suggestion that the board is acting so for some invidious reason, such as the plaintiff's race, and she is thus perforce appealing to the "class of one" cases, an area of increasing activity and concern in the wake of the Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam). The Court held that an individual who has not been singled out because of race or some other trigger of invidious discrimination can still obtain a remedy under the equal protection clause for "irrational and wholly arbitrary" adverse treatment by government. *Id.* at 565. Breathtaking vistas of liability are opened up by that formulation, leading us to hold in *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000), "that to make out a prima facie case [of a 'class of one' denial of equal protection] the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." See also *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002); *Cruz v. Town of Cicero*, 275 F.3d 579, 587 (7th Cir. 2001); *Bartell v. Aurora Public Schools*, 263 F.3d 1143, 1149 (10th Cir. 2001); *Bell v. Duperrault*, 367 F.3d 703, 709-13 (7th Cir. 2004) (concurring opinion). There is no evidence of that here.

But as we noted recently in *Indiana Land Co. v. City of Greenwood*, 378 F.3d 705, 713 (7th Cir. 2004), in two cases subsequent to *Hilton*—*Nevel v. Village of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002), and *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001)—panels of this court stated, without citing *Hilton*, that as an alternative to the application of the standard laid down in that case, a class-of-one case could be proved simply by showing that the defendant had intentionally treated the plaintiff differently from others similarly situated and had had no rational basis for doing so. These divergent strands in the case law can, however, be woven together by noting that intentionality is an ambiguous concept, shading at one end into mere knowledge of likely consequences and at the other into a desire for those consequences. The county health board "intentionally" treated the plaintiff worse than it treated her predecessors and neighbors in the sense that it knew—it had to know—that its pattern of enforcement was uneven. But it did not "intentionally" treat the plaintiff worse in the sense of wanting her to be made worse off than those others. And it is the latter sense in which a "class of one" case requires a showing that government "intentionally" treated the plaintiff worse than others. In other words, we don't think the Supreme Court in *Olech* intended to overrule *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979), which holds that an official "intends" a consequence when he acts because rather than in spite of it.

Whatever the outer bounds of the "class of one" concept, moreover, cases such as *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996), which hold that selective enforcement of the laws is not actionable as a violation of equal protection unless the selection is based on an invidious criterion such as race, and cases such as *Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985), which hold that the decision not to prosecute is generally unreviewable, preclude, we believe, a "class of

one" claim based solely on a failure to prosecute at the plaintiff's behest. See also *Linda R.S. v. Richard D.*, 410 U.S. 614, 617-19 (1973). The plaintiff in this case is a victim of uneven enforcement, nothing more, and as we said in *Hameetman v. City of Chicago*, 776 F.2d 636, 641 (7th Cir. 1985), "The Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all. Otherwise few speeders would have to pay traffic tickets. Selective, incomplete enforcement of the law is the norm in this country."

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*