In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1626

MAULDING DEVELOPMENT, LLC,

*Plaintiff-Appellant,*

*v.*

CITY OF SPRINGFIELD, ILLINOIS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 04 C 3075—**Jeanne E. Scott**, *Judge.*

ARGUED JANUARY 4, 2006—DECIDED JULY 18, 2006

Before CUDAHY, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Maulding Development, LLC ("Maulding") convinced the district court to issue a writ of mandamus ordering the City of Springfield, Illinois and related City officials (the "City") to approve two warehouse development plans Maulding had submitted. Maulding simultaneously sought to recover damages it suffered due to the delay in garnering the approval for one of the plans. The district court was unconvinced, however, with respect to damages and granted summary judgment to the City on this issue. Maulding (but not the City) appeals, and we affirm.

## I.  HISTORY

Maulding Development is a real estate development company owned and operated by David Maulding ("Mr. Maulding"), a Caucasian male. Maulding wanted to build warehouses on the west side of Springfield. Maulding submitted a development plan to the City. Before giving final approval, the City agreed to the preliminary issues of Maulding's variance requests and its proposed Economic Development Agreement. At some point during the planning stage, certain African-American City officials asked Maulding to consider relocating its warehouse project to the east side of Springfield in an area with a significant African-American population. Maulding agreed. Maulding then performed the necessary legwork and submitted a plan to the City for a warehouse development project on the east side. The plan met all of the technical requirements for this type of project and no variances were necessary.

Generally, when voting on whether to approve a proposed development, the aldermen on the City Council will defer to the alderman of the ward in which the proposed development is to be located. For the east side plan, that would be Alderman Frank Kunz, one of the original officials who approached Maulding about relocating its warehouse project. After Maulding submitted its plan for the new location, Kunz told Mr. Maulding he would vote to approve the plan. Because the other aldermen would follow Kunz's lead, the plan was set for approval, according to Maulding.

Unfortunately for Maulding, the neighbors to the proposed development site on the east side subsequently objected to its plan. The opponents live in a residential neighborhood that is situated on land zoned for industrial use (which is why Maulding needed no variance for the new location). The developer of the neighborhood had obtained a zoning variance to permit the building of these homes; this was originally done as part of a redevelopment project.

As the City was considering Maulding's new plan (and presumably due to the neighbors' objections), a public meeting was held between Mr. Maulding and residents from the east side of the City. Kunz and two other aldermen also attended. The meeting did not go well for Mr. Maulding, as he was verbally attacked with racial slurs. Without going into detail, suffice it to say some residents were quite vocal in their belief that he was a racist. Kunz and the other aldermen present said nothing, nor did they acknowledge or in any other way signify their agreement with the residents' opinions.

Sometime later, the matter came before the City Council for a vote. Some east side neighbors attended and voiced their objections, while Mr. Maulding spoke in favor of both projects. The city council denied both the east and west side plans, 10-0, citing public safety concerns. At the time of the vote, Kunz noted the City had never before denied approval for development plans that met all of the technical requirements.

Maulding then filed suit in the district court. The court issued a writ of mandamus ordering the City to approve both plans, as the approval of a development plan that met all technical requirements was a ministerial act, as opposed to a discretionary one.[1] Maulding also raised a "class of one" equal protection claim, alleging the City's failure to approve the east side plan was on account of Mr. Maulding's race. The district court granted summary judgment for the City, finding no evidence of similarly situated entities and no evidence of racial animosity on the City's part.

---

[1] This decision of the district court is not before us, as the City did not appeal.

## II. ANALYSIS

We review a district court's grant of summary judgment de novo. *Jordan v. City of Gary, Ind.,* 396 F.3d 825, 831 (7th Cir. 2005) (citation omitted). Summary judgment is appropriate if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)); *Ezell v. Potter,* 400 F.3d 1041, 1046 (7th Cir. 2005) (citation omitted); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

Maulding has based its "class of one" claim on 42 U.S.C. § 1983, arguing the City violated its equal protection rights under the Fourteenth Amendment. We "ha[ve] recognized equal protection claims brought by a 'class of one,' although we have acknowledged that it is difficult to succeed with such a claim." *McDonald v. Vill. of Winnetka,* 371 F.3d 992, 1001 (7th Cir. 2004) (citation omitted). To establish its "class of one" claim, Maulding must show (1) it has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment or the cause of the differential treatment is a "totally illegitimate animus" toward Maulding by the City. *See Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam); *Nevel v. Vill. of Schaumburg,* 297 F.3d 673, 681 (7th Cir. 2002).[2]

---

[2]  Maulding makes no mention of the "no rational basis" approach, and bases its claim only on the allegation that the City acted with an "improper purpose," namely that the City rejected Maulding's plan because it was owned and managed by a Caucasian male. Therefore, we need not address the question of exactly what a plaintiff must demonstrate to support the second element of a prima facie class-of-one equal protection claim. *See Ind. Land Co.*

(continued...)

Maulding's claim is doomed because of the total lack of evidence of someone who is similarly situated but intentionally treated differently than it. This type of evidence is required because "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." *E&T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987); *see Olech*, 528 U.S. at 564. The only evidence Maulding points to on appeal is the statement made by Alderman Kunz. Kunz admitted during the City Council meeting that the City was doing something it had never done before, namely that it was denying the approval of a large scale development plan that met all technical requirements. The only argument Maulding makes is that it is one of a group of developers seeking approval of large scale development plans, they all submitted plans that met the City's technical requirements, and all were approved except Maulding's.

"There is no precise formula to determine whether an individual is similarly situated to comparators." *McDonald*, 371 F.3d at 1002 (citing *Barrington Cove, LP v. R.I. House & Mortgage Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001)). "However, a court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *Id.* (citing *Harlen Assoc. v. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001); *Bell v. Duperrault*, 367 F.3d 703, 709-10 (7th Cir. 2004) (affirming district court's grant of summary judgment where the plaintiff failed to raise a triable issue as to whether he was "similarly situated" to comparators); *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455-56 (7th

---

[2]  (...continued)
*v. City of Greenwood*, 378 F.3d 705 (7th Cir. 2004); *Tuffendsam v. Dearborn County Bd. of Health*, 385 F.3d 1124 (7th Cir. 2004); *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677 (7th Cir. 2005).

Cir. 2002) (same)). We have imposed on plaintiffs a "high burden" in establishing someone who is similarly situated in these types of cases. *Id.* at 1003 (citing *Bell*, 367 F.3d at 708-09 (individuals were not similarly situated in a "class of one" equal protection case where individuals submitted applications for pier extensions at different times, requested different extensions, or requested to replace existing structures rather than build new ones); *Purze*, 286 F.3d at 455 (individuals were not similarly situated in a "class of one" equal protection case where the individuals submitted different variances than the plaintiff requested, submitted their plats during different time periods, or had requests granted by different and previous Boards)); *see Racine Charter One*, 424 F.3d at 680 (finding that "[t]o be considered 'similarly situated,' comparators must be prima facie identical in all relevant respects") (citations and quotations omitted).

To survive summary judgment, it is Maulding's burden to produce evidence showing a dispute of a material fact. Maulding introduces no evidence regarding any of the other developers, not a single one.[3] Maulding, relying on the statement of the alderman, makes it sound as if there are many to choose from. Maybe there are, maybe there aren't. Common sense tells us there were probably other developers who submitted plans to the City that were approved. But there is no evidence in the record that would even establish this basic fact. Even assuming other plans were submitted to the City, how can we (or a jury) compare them

---

[3] Maulding submitted evidence to the district court of an African-American developer who was considering a warehouse development in Springfield. That particular developer submitted plans to the State of Illinois, as opposed to the City. Maulding has abandoned this evidence on appeal, as it makes no mention of this developer in its argument concerning similarly situated developers.

to Maulding's plan? There is no evidence whatsoever to make such a comparison. There is no evidence establishing whether these other plans involved warehouses, or any type of commercial property for that matter. There is no evidence establishing whether these other plans involved commercial property that, if developed, would abut already existing residential areas. There is no evidence establishing whether these other plans involved the development of a new commercial area, or were simply a redevelopment of a pre-existing site. Furthermore, there is no evidence regarding the timing of these alleged other plans, such as whether they were submitted to the same or different members of the City Council, or even whether they were submitted in the last five (or fifty) years. Finally, there is no evidence establishing that the other plans did not seek variances, like Maulding's. *See Purze*, 286 F.3d at 455-56 (explaining that projects which seek different types of variances are not similarly situated).

"A showing that two projects were similarly situated requires some specificity." *Campbell v. Rainbow City, Alabama*, 434 F.3d 1306, 1314 (11th Cir. 2006) (citations omitted); *Racine Charter One*, 424 F.3d at 680. Maulding's sweeping argument that it was "treated [ ] differently than any other developer has ever been treated," with no evidentiary support, has no specificity. As the City argues, "All developers are not identical, all plans are not identical, and all developments are not identical." To the extent the City means "similarly situated" as opposed to "identical," we could not agree more, and the district court was correct in determining that Maulding had not introduced any evidence of similarly situated developers. Therefore, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*